IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SANDRA CORBETT, | * |
| Plaintiff, | * |
| v. | * |
|  | * Civil No. 24-1911-BAH |
| DOLGENCORP, LLC, | * |
| Defendant. | * |
|  | * |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Sandra Corbett ("Corbett") sues Dolgencorp, LLC ("Defendant") for negligence after Plaintiff slipped and fell outside of Dolgencorp's Dollar General store in East New Market, Maryland. ECF 1 (complaint). Pending before the Court is Defendant's motion for summary judgment (the "Motion"). ECF 22. Corbett filed an opposition, ECF 25, and Defendant filed a reply, ECF 26. All filings include memoranda of law, and the Motion and Corbett's response both include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendant's Motion is **DENIED**.

I.    BACKGROUND

On January 20, 2024, Dollar General employees Teresa Cephas ("Cephas") and Ashley Aaron ("Aaron") arrived at work between 7:00 and 7:30 a.m. ECF 22-3 (Aaron's deposition), at 6, 20:7–9; ECF 22-4 (Cephas' deposition), at 5, 14:8–10. It was cold and windy that day, and

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

there was a dusting of snow on the sidewalk from snow that fell overnight. ECF 22-3, at 7:11, at 23:18–21.

Aaron and Cephas observed the sidewalk in front of Dollar General "had a couple of patches of ice" located in front of the "no parking zone," ECF 22-4, at 6, 19:18–19, and some other "slippery parts," ECF 22-3, at 12, 43:2–3, so they "shoveled as much as [they] could to clear the sidewalk," and then put Ice Melt on the sidewalk before the store opened, *id.* at 7, 24:4–5; ECF 22-4, at 6, 21:15–16. According to Aaron and Cephas, they scattered Ice Melt approximately two to three times that morning, including an application of Ice Melt at some point between 9:00 and 10:00 a.m., before Corbett arrived at the store. ECF 22-3, at 7, 24:21–25:1, at 8, 26:5; ECF 22-4, at 7, 22:6–23:11. At that point, the area in front of the store was "[w]et and slushy . . . randomly periodically throughout the whole sidewalk." ECF 22-4, at 7, 22:11–14.

Corbett arrived at the Dollar General around 10:00 a.m. ECF 22-2, at 8, 28:20–22. She parked "right up front" about "four parking spots down from the door" to the left of the front door. *Id.* at 9, 32:9–18. She then "got out and closed the door of [her] truck, locked it, took one step up on the sidewalk, and [] went down," landing on her right hip. *Id.* at 10, 33:10–11, 33:17. Her phone and keys went "sliding across the sidewalk." *Id.* at 10, 33:12–14. According to Corbett, she slipped on ice, even though she "looked" and "did not see" any ice on the sidewalk, nor did she see any salt or Ice Melt on the sidewalk, either. *Id.* at 10, 34:17–35:9. As a result of the fall, Corbett dislocated and fractured her hip. *Id.* at 4, 12:1–4.

A customer notified Aaron and Cephas that someone had fallen and they both went outside, where they soon found Corbett on the ground "hollering that she was in pain." ECF 22-3, at 9, 31:11–19; ECF 22-4, at 7, 23:17–24:1, at 8, 26:6–8. The ground immediately around Corbett was covered in "water, like slush melting." ECF 22-3, at 9, 32:5–6, at 13, 46:9. According to Cephas'

interrogatory responses, "the snow melted and froze again causing ice patches to form on the sidewalk," in the area where Corbett fell and which caused her fall. ECF 25-4, at 2, 4. In deposition testimony, however, Cephas denies that there was ice where Corbett fell, and asserts "[i]t was mostly wet/slushy and there was Ice Melt down." ECF 22-4, at 10–11, 37:21–38:12.

Aaron and Cephas stayed with Corbett until Emergency Medical Services ("EMS") responded to Dollar General. ECF 22-3, at 9, 33:1–2. Corbett was taken by ambulance to Peninsula Hospital, where she remained for five days until she was discharged to a rehabilitation facility. ECF 22-2, at 12, 41:7, 41:15–19. She continues to have difficulty walking and a limp associated with the fall. *Id.* at 13, 47:5–6. Corbett filed the instant lawsuit in July of 2024, ECF 1, and Defendant's motion for summary judgment, ECF 22, is now ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting

3

*Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III. ANALYSIS

Defendant moves for summary judgment on Corbett's negligence claim, asserting that Defendant did not have "actual or constructive knowledge of a dangerous condition involving an accumulation of ice which caused Plaintiff to fall." ECF 22-1, at 8.

Under Maryland law,[2] "to assert a claim in negligence, the plaintiff must prove: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp. 3d 548, 560 (D. Md. 2014) (internal quotation marks omitted) (quoting *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013)). "[I]n Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser." *Id.* at 561. "The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Aska-Abramson v. Wal-Mart Stores E., LP*, 743 F. Supp. 3d 695, 699 (D. Md. 2024) (quoting *Tennant v. Shoppers Food Warehouse Md. Corp.*, 693 A.2d 370, 388 (Md. App. 1997)). Here, neither party disputes that Corbett was a business invitee when she fell outside of the Dollar General store. *See* ECF 22-1, at 7; ECF 25, at 6.

A store owner "only has a duty to exercise reasonable care to 'protect the invitee from injury caused by an unreasonable risk' that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have

---

[2] This Court has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). ECF 1, at 2. A federal court exercising diversity jurisdiction must apply the law of the forum state in which the court is located, including the forum state's choice of law rules. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th. Cir. 2007). "'Maryland adheres to the lex loci delicti rule' to determine the applicable law in tort actions." *Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 414 (D. Md. 2011) (*quoting Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). An injury "is deemed to occur where the plaintiff first suffers harm." *Id.* (citing *Burnside v. Wong*, 986 A.2d 427, 438 (Md. 2010)). Because Corbett's fall took place in Maryland, the Court will apply Maryland law.

5

discovered in the exercise of reasonable care." *Rybas*, 21 F. Supp. 3d at 561 (quoting *Casper v. Chas. F. Smith & Son, Inc.*, 560 A.2d 1130, 1135 (Md. 1989)). In a slip-and-fall case, a business invitee "must establish not only that a dangerous condition existed but also that the [landowner or its agent] had actual or constructive knowledge of the dangerous condition and that the knowledge was gained in sufficient time to give [them] the opportunity to remove it or warn the [injured party]." *Avissar v. Westlake Terrace Condo.*, No. 0562, Sept. Term 2020, 2021 WL 3052872, at *4 (Md. App. July 20, 2021) (internal quotation marks omitted) (alteration in *Avissar*) (quoting *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1235 (Md. App. 2007)).

The dispute here centers around whether Defendant had "actual or constructive knowledge of a dangerous condition involving an accumulation of ice which caused [Corbett] to fall." ECF 22-1, at 8. Defendant asserts that it is entitled to summary judgment in its favor because the testimony shows that store "employees inspected the sidewalk before the store opened," applied Ice Melt multiple times, and "saw no accumulation of ice on the sidewalk." *Id.* at 10. Corbett argues that the evidence "creates a jury question" on the issue of Defendant's actual or constructive knowledge of the conditions. ECF 25, at 7. The Court agrees with Corbett.

There is a genuine dispute as to whether Defendant had actual or constructive knowledge of a hazardous condition on the sidewalk where Corbett fell. First, the record shows that there is conflicting testimony as to whether Defendant knew of ice on the sidewalk where Corbett fell. Defendant asserts that its "employees did not observe ice on the sidewalk." ECF 22-1, at 10. But Corbett calls attention to Cephas' interrogatory responses, which conflict with Cephas' own testimony on whether there was ice where Corbett fell. When asked to describe "the condition of the Premises in the area where the Plaintiff fell" and "what caused the Occurrence," Cephas answered that "[i]t had previously snowed and the snow had melted leaving ice patches on the

sidewalk."[3] ECF 25-4, at 2, 4. But, later, at her deposition, Cephas testified that the patches of ice were not in the area where Corbett fell, but were actually located further down the sidewalk "where there's a no parking [zone], that was where you would have seen the patches, small patches of ice that were down there." ECF 22-4, at 6, 21:1–3. When questioned about this inconsistency at her deposition, Cephas said: "I don't remember giving that answer because there was [no ice]. It was mostly wet/slushy and there was Ice Melt down." *Id.* at 10–11, 36:21–38:2. Whether Cephas' testimony is to be believed in light of her conflicting interrogatory responses is a question of witness credibility that is not for the Court to decide at the summary judgment stage. Moreover, although Aaron also denied in her deposition that there was any ice on the sidewalk where Corbett fell, she later testified that when she and Cephas arrived at work that day, they "notice[d] some slippery parts" which caused them to start putting Ice Melt on the sidewalk. ECF 22-3, at 12, 43:2–3. Taken in the light most favorable to Corbett, Cephas' inconsistent responses as well as Aaron's testimony create a dispute of fact on their knowledge of the presence of ice before Corbett fell.

There is also a genuine factual dispute as to whether Defendant had constructive knowledge of the ice, particularly based on the weather conditions that day. Corbett contends that she slipped on ice, although she did not see the ice when she fell. ECF 22-2, at 10, 34:19–35:14. And Corbett, Aaron, and Cephas all testified that it snowed the night before and was very cold outside the day Corbett fell. *Id.* at 9, 29:4, 30:20; ECF 22-3, at 7, 22:11, 23:17; ECF 22-4, at 5, 15:4, at 8, 28:18–19. Corbett argues that Defendant knew of the icy conditions based on the employees' inspections of the sidewalk, where they "noticed wet and slushy areas" and "that it was extremely cold the

---

[3] During her deposition, Cephas did not recall providing answers to the interrogatories but affirms that her signature is affixed thereto. ECF 22-4, at 10, 36:1–11.

7

morning of the occurrence." ECF 25, at 9. A reasonable jury could conclude that Aaron and Cephas' testimony supports this assertion. Both employees testified that they inspected the sidewalk and put down Ice Melt at least twice between the time the store opened and when Corbett fell. ECF 22-3, at 7:3–7; ECF 22-4, at 6, 21:15–16, at 7, 22:6. And while Aaron testified that she did not observe any ice, ECF 22-3, at 9, 32:5–14, she testified that there was "water" and "slush melting" in the area where Corbett fell, *id.* at 13, 46:3–9. Cephas' testimony is similar—she stated that the sidewalk was "wet and slushy . . . randomly periodically throughout the whole sidewalk" prior to Corbett's fall, and that she did not remember whether the "slushy areas were in the same areas where [Corbett's] fall occurred." ECF 22-4, at 7, 22:6–14, at 8–9, 29:20–30:2. A question of fact exists as to whether Defendant should have known a dangerous condition existed based on the slush on the sidewalk and in light of the cold and windy weather conditions outside. *Cf. Rybas*, 21 F. Supp. 3d at 570–71 (denying summary judgment "where defendants were aware of weather conditions and other factors that led to the alleged wet and slippery dance floor"). Moreover, based on the testimony that icy patches accumulated on other areas of the sidewalk even after applying Ice Melt, ECF 22-4, at 13, 46:13–20, a jury could also reasonably infer that it was cold enough to cause the slush in the area where Corbett fell to also freeze.[4] *Cf. Bass v. Hardee's Food Sys., Inc.*,

---

[4] Corbett also raises a dispute as to whether there was "black ice" on the ground where she fell and points to the EMS report in support, ECF 25, at 9, which "noted large areas of black ice all around the patient," ECF 25-5, at 12. Though not explicitly stated, Defendant seemingly contests the admissibility of the EMS report because it "is not supported by affidavit." ECF 26, at 3. "In supporting or opposing summary judgment, a party must rely on facts that would be admissible at trial." *Rybas*, 21 F. Supp. 3d at 559. However, "[e]vidence appropriate for summary judgment need not be *in a form* that would be admissible at trial . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (emphasis added). The Court need not address the dispute over the EMS report further since even if the Court did not consider it, the deposition testimony and interrogatory responses in the record present a dispute of material fact that precludes summary judgment.

982 F. Supp. 1041, 1043 (D. Md. 1997) (summary judgment precluded where a reasonable jury could have concluded that plaintiff slipped because an area where water pooled froze "in January, a few days after a period of snowfall").

There also exists a genuine question of material fact as to whether the sidewalk was treated in the area where Corbett fell, which may have remedied the dangerous condition. Aaron testified that she "shoveled as much as [she] could," and that immediately prior to the fall, the sidewalk "was pretty much clear" but was still "wet." ECF 22-3, at 7, 24:3, at 8, 26:8–9. Aaron and Cephas both testified that they applied enough Ice Melt to the sidewalk to "coat[] that sidewalk" and "hear it crunch under your feet." *Id.* at 7, 25:1–2; ECF 22-4, at 8, 29:6–7. But Corbett testified that she looked and did not see any "salt" on the sidewalk where she fell, ECF 25-1, at 4, 35:7–9, a term that was used interchangeably with Ice Melt during depositions, ECF 25-3, at 3, 10:2–4; ECF 22-4, at 14, 52:9–12. If Corbett's testimony is to be believed, and the sidewalk was not salted, "[D]efendant could [be] held to [be] negligent in not sanding or salting the wet area formed by the melting snow." *Honolulu Ltd. v. Cain*, 224 A.2d 433, 436 (Md. 1966). Defendant's motion will be denied because granting summary judgment here would require the Court "to weigh the evidence and determine the truth of the matter," which is a task reserved for a jury. *Anderson*, 477 U.S. at 249; *see also* ECF 1, at 8 (demanding a jury trial).

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, ECF 22, is DENIED.

A separate implementing order will issue.

Dated: January 30, 2026                                          /s/
                                                                 Brendan A. Hurson
                                                                 United States District Judge